UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

Case Number: 21-14035-CR-MARTINEZ

UNITED STATES OF AMERICA,

vs.

JORGE CHICA-GILER,

Defendant.
_____/

## ORDER GRANTING THE GOVERNMENT'S MOTION *IN LIMINE*

**THIS CAUSE** came before the Court on the Government's Motion to Preclude Evidence of Defense of Duress or Necessity ("Motion *in Limine*"). (ECF No. 28). After reviewing the briefing, (ECF Nos. 28 & 32), and conducting an evidentiary hearing where the Court heard argument and the factual proffers from the parties, (ECF No. 143), and being otherwise duly advised in the premises, the Court **GRANTS** the Motion *in Limine*. Although outlined in the Court's prior order deferring ruling on the Court's Motion *in Limine*, (ECF No. 138), the Court again describes the charges brought against Defendant, the law, and now supplements that background with the factual proffers presented by the parties at the hearing and the reasons for the Court's ruling now.

**I.      Background**

The superseding indictment charges Defendant Jorge Chica-Giler with five counts: (1) conspiracy, 18 U.S.C. § 371; (2) engaging in the business of dealing firearms without a license, 18 U.S.C. § 922(a)(1)(A); (3) smuggling firearms from the United States, 18 U.S.C. § 554; (4) delivery of a firearms to a common carrier without written notification, 18 U.S.C. § 922(e); and (5) possession of a firearm by an unlawful alien, 18 U.S.C. § 922(g)(5)(B). Defendant was

1

arraigned and pled not guilty. (ECF No. 15). In summary, the counts arise out of allegations that Defendant, an alien admitted to the United States under a nonimmigration visa, conspired to ship firearms in compressed air tanks from the United States to Ecuador via freight forwarder for the purposes of reselling the firearms in Ecuador. (*See generally* ECF No. 74).

The Government anticipates that at trial, Defendant will pursue a defense that he acted wrongfully under duress because certain individuals made threats against Defendant or Defendant's family in Ecuador. (ECF No. 28 at 3–4). In response to the Government's Motion *in Limine*, the Defendant confirms his intent to present a duress defense. (ECF No. 32). The Government did not file a reply.

## II.     Applicable Law

Before presenting a duress defense to the jury, "a defendant must first produce or proffer evidence sufficient to prove the essential elements of the defense." *United States v. Montgomery*, 772 F.2d 733, 736 (11th Cir. 1985) (citing *United States v. Bailey*, 444 U.S. 394, 415 (1980)). The elements of a duress defense are that the defendant performed "the unlawful act because (1) he was under an immediate threat of death or serious bodily injury, (2) he had a well grounded fear that the threat would be carried out, and (3) he had no reasonable opportunity to escape." *United States v. Sixty Acres in Etowah Cnty.*, 930 F.2d 857, 860 (11th Cir. 1991) (citation omitted). "Duress can also exist when the threat of immediate, serious harm is directed at a third person and the defendant acted unlawfully in order to protect the other party." *United States v. Blanco*, 754 F.2d 940, 943 (11th Cir. 1985).

As to the first element of a duress defense, the "requirement of immediacy of the threat is a rigorous one" such that the "fear of *future* bodily harm to one's self or to others will not suffice." *Sixty Acres*, 930 F.2d at 860 (citation omitted); *see also United States v. Alvear*, 181 F. App'x 778,

780 (11th Cir. 2006) (concluding that a "generalized apprehension of future harm is insufficient to establish the first element of the duress defense"). Stated differently, a defendant must show that he "had no reasonable alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm." *United States v. Montgomery*, 772 F.2d 733, 737 (11th Cir. 1985). Notably, "the apprehension of immediate danger must continue the whole time the crime is committed." *Sixty Acres*, 930 F.2d at 860 (citation omitted). Moreover, "[a] claim of duress and coercion will not afford a valid excuse when a defendant has recklessly or negligently placed himself in a situation in which it was probable that he would be subject to duress." *Blanco*, 754 F.2d at 943.

The second element of a duress defense requires the defendant have a well-grounded fear that the threat will be carried out. *See Sixty Acres*, 930 F.2d at 860. Notably, the fear of threat must be a "fear rooted in something other than the defendant's subjective conjectures about something constituting a threat." *United States v. Hansen*, 563 F. App'x 675, 678 (11th Cir. 2014). A well-grounded fear "assumes that a threat objectively existed in reality and was not derived from the defendant's subjective belief that something constituted a threat." *Id.*

With respect to the third element of a duress defense, the defendant must not have had a reasonable opportunity to inform police or other authorities about the source of the compulsion. *See United States v. Lee*, 694 F.2d 649, 654 (11th Cir. 1983) (concluding that defendant was properly precluded from raising a duress defense because he "had numerous opportunities to inform the police" but "failed to take advantage of such opportunities"); *Sity Acres*, 930 F.2d at 861 ("[I]f the accused had a reasonable opportunity to avoid committing the illegal act without subjecting himself to the threatened harm, or subsequently ignored a reasonable opportunity to escape the source of the compulsion, the defense of duress is no longer available."); *Alvear*, 181

F. App'x at 781 ("A defendant seeking to assert a defense of duress must have taken *any* reasonable opportunity that he had during the commission of the crime to inform police or other authorities." (emphasis in original)).

When deciding whether Defendant is entitled to present a duress defense, the Court is "not free to determine the existence of such a defense as a matter of law." *United States v. Ruiz*, 59 F.3d 1151, 1154 (11th Cir. 1995). Indeed, the "threshold burden is extremely low." *See id.* (citation omitted). A defendant "is entitled "to have presented instructions relating to a theory of defense for which there is *any foundation* in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Lively*, 803 F.2d 1124, 1126 (11th Cir. 1986); *see also United States v. Hedges*, 912 F.2d 1397, 1405 (11th Cir. 1990) (noting that a defendant must demonstrate that the defense "has some basis in the evidence and has legal support" (citation omitted)). In deciding whether defendant has met his burden of production, "the court is obligated to view the evidence in the light most favorable to the accused." *Ruiz*, 59 F.3d at 1154; *Hedges*, 912 F.2d at 1990.

### III. Factual Proffers

On August 25, 2022, the Court conducted an evidentiary hearing to determine whether there was any foundation in the evidence for Defendant Chica-Giler to present a defense of duress. At the hearing, counsel for the Defendant proffered that Chica-Giler would testify to the following facts at trial. Defendant is from Ecuador. He came to Miami, Florida on a temporary visa. When Defendant arrived here, he contacted his friend Ernesto Teran, who is also from Ecuador. Teran gave Defendant a job in his cellphone business. Defendant's job was to meet with third parties, give them envelopes, and in exchange, receive boxes. Defendant proffers that he looked in neither the envelopes nor the boxes but assumed the packages related to the cellphone business.

4

One evening, Teran invited Defendant to his home. There, Teran and Defendant participated in a Zoom meeting orchestrated by an individual named "Andres." In addition to Andres, Jose Adolfo Fito Macias Villamar and Christina Tinajero, from the Los Cheneros gang in Ecuador, were also on the Zoom meeting. During the meeting, the gang informed Defendant that they needed him to be a mule by transporting guns to Ecuador. Defendant proffered that the gang threatened to kill him and his family if he refused to assist or deviated from the plan to buy firearms in Miami-Dade, Broward, Palm Beach, and St. Lucie County, to put those firearms in air tanks, and to ship those firearms to Los Cheneros in Ecuador. Defendant also proffers that he could not go to the police because there are "rogue" law enforcement officers in Miami. Defendant believes that the gang has police officers "inside" the South Florida police departments.

In response to Defendant's proffer, the Government proffered that at trial it would present the following evidence. Defendant was not under constant surveillance from the gang, and he had multiple opportunities to report the gang's threat to law enforcement in Broward, Palm Beach, St. Lucie, and Martin County. At trial, the Government will seek to admit into evidence certain text messages between Defendant and Tinajero showing that Defendant did not fear the threat from the gang would be carried out. Those text messages will show that Defendant threatened Tinajero that he would quit the smuggling operation if he was not paid. In addition, the Government proffered that it would present evidence and testimony of Defendant's statements on what he would do to other witnesses in this case. The Government quoted some of the statements Defendant made to Tinajero about those witnesses: "I really want to do things, cut his hair, torture him until he asks for forgiveness. Do you understand? And let him understand that he is a – that he cannot be around like that in life. Do you understand? He can get killed. I'm going to forgive his life because of me, do you understand? I will kill him. I do not give an F, I think we need to scare."

5

The Government also proffered that the evidence at trial will show that when Defendant learned of the potential charges against him through the arrest of a co-conspirator, he traveled to the Bahamas, and booked a flight from the Bahamas to Ecuador with a stopover in Panama. United States Homeland Security Investigations intercepted Defendant in Panama moments before he was supposed to get on his flight to Ecuador.

## IV. Discussion

After hearing argument from the parties and the factual proffers presented, the Court concludes that Defendant does not have any foundation in the evidence as to the first and third elements of a duress defense. Defendant did not make a threshold showing as to the immediacy requirement because the threat by Los Cheneros to Defendant was, at most, a generalized threat of future harm. Defendant proffered no evidence to support that he was under an immediate threat for the approximately eight-month-long scheme. *See Alvear*, 181 F. App'x at 780 (concluding that Defendant was not under an immediate threat of harm because no "specific person was standing by to execute on the unspoken threat that if [Defendant] failed to comply with the traffickers' wishes" someone would harm him and his family).

As to the requirement that Defendant lacked an opportunity to escape, Defendant did not proffer any evidence showing he was under constant surveillance during the approximately eight-month-long scheme. Indeed, it appears there were multiple opportunities for Defendant to report the threat and scheme to law enforcement. Even taking into consideration Defendant's distrust of South Florida police departments, Defendant could have reported the conduct to law enforcement in St. Lucie and Martin County during his trips there. *See United States v. Amede*, 977 F.3d 1086, 1102 (11th Cir. 2020) (holding that district court did not abuse its discretion by excluding testimony corroborating a duress defense because defendant could "point[] to no existing evidence

6

that shows he had no reasonable alternatives to engaging in a cocaine conspiracy"); *United States v. Rice*, 259 F. App'x 300, 302 (11th Cir. 2007) (affirming district court's grant of Government's motion *in limine* to preclude duress defense where Defendant "failed to prove he had no reasonable legal alternative" to continuing the unlawful conduct). Because Defendant has not proffered any foundation in evidence to support an immediate threat of harm, or the lack of opportunity to escape, Defendant is unable to present a duress defense to the jury.

Separately, the Court notes that the Government's proffer of text messages between Defendant and Tinajero—supposedly one of the individuals who threatened Defendant during the Zoom meeting—tends to show that Defendant did not actually believe the threat would be carried out. Even more, the fact Defendant took steps to return to Ecuador after he learned of the charges in this case suggests he did not have a well-grounded fear in the gang's threat.

### V. Conclusion

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Government's Motion *in Limine*, (ECF No. 28), is **GRANTED WITHOUT PREJUDICE**. During opening statements, counsel for Defendant shall not argue a duress defense. To the extent Defendant can present new evidence at trial on his duress defense that has not already been considered by the Court, Defendant may reraise his argument at trial, **outside the presence of the jury**. To that end, the Court reserves ruling as to whether to permit the inclusion of a duress defense in closing arguments and the jury instructions. Nevertheless, the Court advises the parties to tread lightly around these issues and to request a sidebar if necessary.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29 day of August, 2022.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to: All Counsel of Record