UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-14035-CR-MARTINEZ/MAYNARD

UNITED STATES OF AMERICA,

v.

JORGE CHICA-GILER,

        Defendant.
_____/

## FACTUAL PROFFER

The United States of America, by and through its undersigned Assistant United States Attorney, and Jorge CHICA-GILER, together with his counsel, admit if this case were to proceed to trial, the government would be able to prove the allegations contained within the Indictment, which charges the defendant with conspiracy, in violation of Title 18, United States Code, Section 371; engaging in the business of dealing firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A); smuggling firearms from the United States, in violation of Title 18, United States Code, Section 554; delivery of a firearm to a common carrier without written notification, in violation of Title 18, United States Code, Section 922(e); and possession of a firearm by an unlawful alien, in violation of Title 18, United States Code, Section 922(g)(5)(B). The defendant, together with his counsel, further admits that if this case were to proceed to trial, the government would be able to prove the following facts, among others, beyond a reasonable doubt. The defendant also stipulates that those facts, elements of the crime and the following recitation of the facts shall constitute the underlying factual basis for the entry of a plea of guilty in this case:

*Court Exhibit #1*

1. Beginning in December, 2020, and continuing through August, 2021, the defendant and others combined, conspired, and confederated to engage in the business of dealing in firearms without a license, smuggle firearms out of the United States, and deliver firearms to a common carrier for shipment without notice to the carrier.

2. In furtherance of this conspiracy, the defendant directed co-conspirators to purchase firearms from federal firearms licensees on his behalf for the purpose of resale to persons in Ecuador. Specifically:

   a. On January 19, 2021, the defendant provided a known co-conspirator with funds to purchase a Pioneer Arms Sporter 7.62 caliber firearm, a Glock Model 19 9mm firearm, and a DEL-TON INC Sierra 5.56 caliber firearm from a Federal Firearms Licensee;

   b. On January 20, 2021, the defendant provided a known co-conspirator with funds to purchase a Romania Draco 7.62 caliber firearm, an American Tactical ATI 12-gauge shotgun, a GSG GS .22 caliber firearm, a Glock Model 34 9mm firearm, a Smith and Wesson M&P 9 9mm firearm, and a Ruger 57 5.57 caliber firearm from a Federal Firearms Licensee;

   c. On January 27, 2021, the defendant provided a known co-conspirator with funds to purchase five (5) Anderson MFG AM-15 firearms from a Federal Firearms Licensee;

   d. On February 1, 2021, the defendant provided a known co-conspirator with funds to purchase three (3) Tactical Life LLC TL-15 firearms, a CZ Scorpion EVO 3 S1 9mm firearm, and a Springfield Armory Saint 5.56 caliber firearm from a Federal Firearms Licensee;

   e. On February 2, 2021 the defendant provided a known co-conspirator with funds to purchase a Pioneer Arms HellPup 7.62 caliber firearm, a Rock River Arms LAR-15

5.56 caliber firearm, and a CZ Scorpion 9mm firearm from a Federal Firearms Licensee; and

f. On February 16, 2021 the defendant provided a known co-conspirator with funds to purchase a Glock Model 19 9mm firearm and a Century Arms VSKA AK-47 7.62 caliber firearm from a Federal Firearms Licensee.

3. After obtaining the firearms, the defendant and his co-conspirators disassembled the firearms, vacuum sealed the firearms, and then wrapped them with tinfoil.

4. The defendant and his co-conspirators then purchased 11-gallon compressed air tanks from Harbor Freight and took the firearms and the tanks to the residence of a co-conspirator. At the residence the defendant directed the co-conspirator to cut off one end of each tank. The defendant and his co-conspirators then wrapped the packaged firearms in welding blankets, and placed them inside the air tanks.

5. After the tanks were loaded with firearms, the defendant directed the co-conspirator to weld the tanks together, forming one 22-gallon tank with firearms concealed inside. The co-conspirator ground the welds and painted the tanks black to conceal the modifications.

6. The defendant and his co-conspirators then packaged the tanks in UPS boxes filled with packing peanuts and taped the edges of the boxes in an "X" pattern.

7. Finally, the defendant directed his co-conspirators to weigh the packages, and to ensure that they weighed less than 110 pounds, in order to avoid additional X-ray screening.

8. Then, the defendant and a co-conspirator loaded each package into the defendant's 2005 green Nissan Armada, and dropped off the packages at Siati Express, in Miami, Florida, for shipment to Ecuador.

9. The defendant made eight such shipments to Ecuador, including shipments on January 5, 2021; January 25, 2021; February 4, 2021; February 19, 2021; March 5, 2021; April 1, 2021; July 6, 2021; and August 3, 2021.

10. The defendant provided his real name, Jorge Chica-Giler, and his Ecuadorian identification card for the January 5, 2021 shipment. He then provided the false name, Tonny Escobar, and a fake New York State driver's license bearing his photograph, for the remaining shipments.

11. The defendant did not provide written notice to Siati Express (a common carrier) that the above-described shipments contained firearms, he knew that his failure to disclose the contents was contrary to the law, and he knew that the exportation of the firearms was contrary to the law.

12. On August 2, 2021, surveillance footage places CHICA-GILER at a Harbor Freight store, located at 2851 NW 27th Ave, Miami, Florida. The time of the surveillance video is consistent with the time CHICA-GILER purchased two twelve-ounce cans of gloss black paint, one masonry cutting wheel, two 11-gallon portable air tanks, and one welding blanket. This purchase is also consistent with GPS data that places CHICA-GILER's vehicle in the vicinity of the Harbor Freight between 1:13 PM and 1:25 PM.

13. On August 3, 2021, GPS data also places CHICA-GILER's vehicle at the UPS store, located at 2045 Biscayne Blvd, Miami, Florida.

14. On August 3, 2021, law enforcement witnessed the defendant and a co-conspirator drop off two packages at Siati Express. The packages were lawfully seized pursuant to border search authority and subjected to an X-ray scan which revealed firearms hidden inside.

15. Documents from the freight forwarder show that the package was destined for an address in Ecuador, but the documents did not disclose the contents of the package.

16. U.S. Customs and Border Patrol officers then opened the tanks and discovered 7 manufactured AR style semiautomatic pistols without serial numbers, 1 HS Produkt XDM 10mm semi-automatic pistol, 2 rifle lower receivers without serial numbers, an American Tactical Imports MIL-Sport lower receiver, 3 rifle upper receivers, and 11 firearm magazines. The firearms and magazines were all vacuum sealed, wrapped in tin-foil, and wrapped in welding blankets.

17. By delivering these firearms to a freight forwarder, the defendant placed them in the stream of interstate commerce.

18. The seven AR style semiautomatic handguns without serial numbers and two of the un-serialized lower receivers were consistent with having been made from 80 percent lower receivers.

19. Of the shipments known to law enforcement, the defendant exported at least 36 firearms to Ecuador during the course of the conspiracy, which resulted in a gross receipts of over $24,000, and a profit of at least $6,100.

20. At the time of the above-described shipments, the defendant knew that he was admitted to the United States on a B2 non-immigrant visitor visa, and was aware of his non-immigrant status.

21. A Ruger .22cal handgun was found during a search of the defendant's apartment.

22. The defendant is not, and has never been, a Federal Firearms Licensee.

23. The HS Produkt XDM 10mm, the ATI MIL-Sport lower receiver, and the Ruger .22cal handgun were manufactured outside the State of Florida and traveled in interstate or foreign commerce.

24. The parties agree that these facts, which do not include all the facts known to the government and the defendant, are sufficient to prove the elements of the following offenses beyond a reasonable doubt:

| | |
|---|---|
| Count 1: | <u>Conspiracy</u> |
| **First:** | Two or more persons in some way agreed to try to accomplish a shared and unlawful plan; |
| **Second:** | the Defendant knew the unlawful purpose of the plan and willfully joined in it; |
| **Third:** | during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and |
| **Fourth:** | the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy. |
| Count 2: | <u>Dealing in Firearms Without a License</u> |
| **First:** | The defendant engaged in the business of selling firearms; |
| **Second:** | The defendant did not have a Federal license; and |
| **Third:** | The defendant acted willfully. |
| Count 3: | <u>Smuggling Goods From the United States</u> |
| **First:** | That the defendant knowingly exported merchandise as described in the indictment; |
| **Second:** | That the defendant's exportation was contrary to 18 U.S.C. § 922(e) "failure to notify common carrier of shipped firearm"; and |
| **Third:** | That the defendant knew the exportation of the merchandise was contrary to law or regulation. |

| | | |
|---|---|---|
| Count 4: | | Failure to Notify a Common Carrier of Shipped Firearm |
| First: | | That the defendant knowingly delivered or caused to be delivered to a common carrier a package in which there was one or more firearms, or did aid and abet such a delivery; |
| Second: | | the package or container was to be shipped or transported from the United States to a foreign nation; |
| Third: | | the package or container was to be shipped or transported to a person who was not licensed as a firearms dealer, manufacturer, importer, or collector; and |
| Fourth: | | the defendant did not give written notice to the common carrier that there were firearms inside the package. |

Count 5:     Possession of a Firearm by a Person Admitted into the U.S. by a Non-immigrant Visa

First:     That the defendant knowingly possessed a firearm in or affecting interstate or foreign commerce;

Second:     at the time of the possession, the defendant was an alien who was admitted to the United States under a non-immigrant visa; and

Third:     at the time of the possession, the defendant knew of his status as an alien admitted to the United States under a non-immigrant visa.

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Date: 8/29/22     By: _____
CHRISTOPHER H. HUDOCK
ASSISTANT UNITED STATES ATTORNEY

Date: 8-29-22     By: _____
JACOB A. COHEN
ATTORNEY FOR DEFENDANT

Date: 8-29-22     By: _____
JORGE CHICA-GILER
DEFENDANT

7